UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

TALISMANIC PROPERTIES, LLC, *et al.*,

      Plaintiffs,                                             Case No. 3:16-cv-285

     vs.

TIPP CITY, OHIO,                                        Magistrate Judge Michael J. Newman
                                                            (Consent Case)

      Defendant.

_____

**DECISION, ORDER AND ENTRY: (1) VACATING THE COURT'S ORDER TO SHOW CAUSE REGARDING SUBJECT MATTER JURISDICTION (DOC. 9); (2) DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND WITHOUT PREJUDICE TO REFILING; (3) ORDERING JUDITH TOMB AND PLAINTIFFS' COUNSEL TO SHOW CAUSE AS TO WHY SANCTIONS SHOULD NOT ISSUE; AND (4) ORDERING SUPPLEMENTAL BREIFING WITH REGARD TO PRIVILEGE**
_____

      This civil consent case is before the Court on an Order to Show Cause docketed by the undersigned on September 8, 2016, in which the Court -- noting that Plaintiffs' federal claims all appear to arise out of an alleged "taking without just compensation" -- ordered the parties to explain why the Court possesses jurisdiction in the absence of allegations that Plaintiffs exhausted state remedies. Doc. 9. The parties filed responses to the Court's Order to Show Cause. Docs. 15, 18. The Court has carefully reviewed this issue and the written submissions of the parties, and this issue is now ripe for determination by the Court.

      Plaintiffs also moved for leave to file an amended complaint (doc. 13), in which they assert that the proposed amendment is needed because discovery has unveiled "additional information that requires amendments to the [c]omplaint." Doc. 13 at PageID 354. In their motion, Plaintiffs do not disclose that their proposed amended complaint also removes all specific references to the United States Constitution and, thus, appears to an attempt to remove

all claims asserted under federal law. *See* doc. 13-1. Defendant Tipp City, Ohio ("Tipp City") filed a memorandum in opposition to Plaintiffs' motion for leave. Doc. 21. Plaintiffs did not file a reply memorandum and the time for doing so has expired.

Finally, this case is before the Court on the City's motion to terminate depositions and to permit the clawback of privileged communications. Doc. 27. Plaintiffs also filed a brief addressing the City's of privilege. Doc. 26.

The Court has carefully reviewed all of the foregoing documents, and these motions are now ripe for decision.

## I.

Plaintiff Talismanic Properties, LLC ("Talismanic") owns 42 lots in the City, which it is developing into a residential subdivision called "Cedar Grove." Doc. 5 at PageID 145. Plaintiff Judith Tomb is Talismanic's general manager. *Id*. The parties were previously involved in litigation in the Miami County, Ohio Court of Common Pleas that resulted in a settlement agreement. *See* doc. 5 at PageID 146. As part of that settlement agreement, the parties entered into a Construction Agreement. *Id*. In the Construction Agreement, Plaintiffs agreed to install general public improvements for the subdivision, including sewer systems, for which Plaintiffs separately contracted with a private construction company to complete at approximately $1.2 million. *Id*.

The Construction Agreement also required that Plaintiffs obtain certain electrical improvements through the City at an estimated cost of $142,721.00, payable in two installments. *Id*.; *see also* doc. 5-2 at PageID 214. Although Plaintiffs entered into the Construction Agreement as part of the settlement, they contend that the estimated cost of the electrical improvements sought by the City is excessive, and that certain portions of the electrical improvements sought by the City -- specifically, a three phase above ground electric line -- offer no benefit to Plaintiffs' development and benefit only neighboring businesses and landowners. *Id*. at PageID 147-48. Plaintiffs also

2

contend that part of the estimated $142,731.00 charged by the City for electrical improvements include excessive material and labor costs -- costs that allegedly exceed comparable costs the City charged other developers in the City. *Id*. at PageID 148.

In addition to the allegedly excessive costs demanded by the City with regard to the electrical improvements, Plaintiffs also allege that the City is unreasonably requiring: (1) that Plaintiffs use more expensive backfill that provides no additional engineering benefit; (2) that conduits be bored under streets for installation of electrical crossings at an additional cost of $12,000 to Plaintiffs; (3) the unnecessary replacement of a portion of a sanitary sewer line at an additional cost to Plaintiffs of $100,000; and (4) the replacement of sections of non-defective curbs. *Id*. at PageID 149-51.

Plaintiffs acknowledge that Tipp City Ordinance § 155.03(F) -- which sets forth the procedure by which aggrieved persons must appeal administrative decisions under the Ordinances -- may apply on its face, but set forth no allegations that they availed themselves of such appeal or that such appeal has been finally adjudicated. *Id*. at PageID 151-54. Instead, Plaintiffs initiated this lawsuit in the Miami County Court of Common Pleas alleging, among other claims, that: (1) Tipp City Ordinance § 155.03(F) is unconstitutional because it violates due process as applied in this case; (2) that the City violated Ohio's Public Records Act; (3) the City breached its contract with Plaintiffs; (4) the City's requirement that Plaintiffs pay for the three phase above ground electric line, as well as excessive charges for labor and material in relation to the electrical line, amount to an unconstitutional deprivation of property without just compensation; and (5) the City tortiously interfered with contracts they entered into with third-parties. *Id*. at PageID 151-59.

The City removed to this Court on the basis that Plaintiffs' complaint sets forth claims arising under federal law -- namely, claims alleging a taking, a deprivation of due process, and an equal protection violation. *See* doc. 1 at PageID 1. Plaintiffs never sought to remand the case to the state court; however, the Court, *sua sponte*, ordered the parties to brief the issue of jurisdiction in light of

3

the fact that Plaintiffs set forth a takings claim without alleging that they availed themselves of state procedures for obtaining compensation.

## II.

The Court first addresses the ripeness of Plaintiffs' takings claim and whether the Court possesses jurisdiction to proceed. Here, Plaintiffs allege a taking by virtue of the City's demand that they pay for a three phase above ground electric line -- which they allege provides no benefit and bears no relation to their development -- in exchange for approval of their development plan. *See* doc. 5 at PageID 156-58.[1] The taking alleged by Plaintiff appears to arise in the context of a taking by virtue of the "unconstitutional conditions doctrine." *See Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2594-99 (2013).[2]

The Takings Clause does not require the payment of just compensation before or "contemporaneously with" the alleged taking. *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985). Instead, if an "adequate process for obtaining compensation" exists, "and if resort to that process 'yield[s] just compensation,' then the property owner 'has no claim against the Government' for a taking." *Id*. at 194-95. Generally, "federal court[s] may . . . hear a takings claim only after two criteria are met: (1) the

---

[1] Notably, Plaintiffs' due process and equal protection claims do not reference the City's demand that they pay for above ground electrical line. *See* doc. 5 at PageID 151-54. Instead, Plaintiffs claims in this regard stem from allegations that the City required them to, at great expense: (1) use more expensive backfill not required to be used by other developers and which provides no additional engineering benefit; (2) bore conduits under streets for installation of electrical crossings at an additional cost of $12,000 to Plaintiffs; (3) unnecessarily replace of a portion of a sanitary sewer line at an additional cost to Plaintiffs of $100,000; and (4) replace sections of non-defective curbs. Doc. 5 at PageID 149-51. Plaintiffs allege they have no adequate opportunity to be heard on the propriety of such decisions via the City's administrative appeal process prior to the expiration of their building permit, thus depriving them of their permit without due process. They also allege that such demands have not been made upon similarly situated developers. *Id*. at PageID 145-56.

[2] That doctrine, as it applies in the context of a Fifth Amendment Takings claim, was more fully explained recently by the Supreme Court in *Koontz*, where the Court held that the government runs afoul of the Takings Clause when it demands certain property -- including money -- from a property owner in exchange for a building permit where the property demanded "lack[s] an essential nexus and rough proportionality" to impact of the building development proposed. *Id*.

plaintiff must demonstrate that he or she received a 'final decision' from the relevant government; and (2) the plaintiff must have sought 'compensation through the procedures the State has provided for doing so.'" *Hensley v. City of Columbus*, 557 F.3d 693, 696 (6th Cir. 2009) (quoting *Williamson*, 473 U.S. at 194).

In Ohio, the compensation procedure requires -- in the absence of an appropriation proceeding initiated by the appropriating government authority -- that the deprived landowner initiate a mandamus action in state court. *Coles v. Granville*, 448 F.3d 853, 865 (6th Cir. 2006); *Vill. of Maineville v. Hamilton Twp.*, 902 F. Supp.2d 1072, 1080 (S.D. Ohio 2012). Absent availing oneself to such state procedures for obtaining just compensation, a taking claim is "unripe." *Texas Gas Transmissions, LLC v. Butler Cnty Bd. of Comm'rs*, 625 F.3d 973, 976 (6th Cir. 2010) (citation omitted). While "[t]his procedure . . . must be followed regardless of whether a physical or regulatory taking is at issue," *see id.*, the undersigned has found no case within the Sixth Circuit finding that a property owner must avail themselves of state procedures -- or that adequate procedures even exist under state law -- in the context of a taking by imposition of "unconstitutional conditions."

Even assuming *Williamson* does apply and that adequate state procedure exist, the Court finds that federal jurisdiction exists under the circumstances of this case. Notably, the lack of ripeness under the *Williamson* standard amounts only to "prudential 'ripeness'" and "not, strictly speaking, jurisdictional" ripeness under Article III. *Horne v. Dep't of Agric.*, 133 S. Ct. 2053, 2062 (2013) (citing *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1013 (1992)). This "prudential rather than . . . jurisdictional bar" should not apply where a local government removes a property owner's takings claim from a state court to federal court because application of *Williamson* in such circumstances "would create the possibility for judicially condoned

5

Case: 3:16-cv-00285-MJN Doc #: 37 Filed: 11/21/16 Page: 6 of 13 PAGEID #: 1436

manipulation of litigation." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 545 (4th Cir. 2013); *see also Sherman v. Town of Chester*, 752 F.3d 554, 564 (2d Cir. 2014); *River N. Properties, LLC v. City & Cty. of Denver*, No. 13-CV-01410-CMA-CBS, 2014 WL 1247813, at *9 (D. Colo. Mar. 26, 2014). In fact, courts have held that local governments waive this "ripeness" requirement "by removing the action . . . and thus invoking federal jurisdiction." *Athanasiou v. Town of Westhampton*, 30 F. Supp.3d 84, 88-89 (D. Mass. 2014); *see also Martini v. City of Pittsfield*, No. CIV.A. 14-30152-MGM, 2015 WL 1476768, at *5 (D. Mass. Mar. 31, 2015).

Based upon the foregoing, the Court concludes that it possesses jurisdiction to proceed on Plaintiffs' federal claims, as well as certain state law claims. Accordingly, the Order to Show Cause (doc. 9) is **VACATED**.

## III.

Next, the Court addresses Plaintiffs' motion for leave to file an amended complaint. Doc. 13. The City first argues that Plaintiffs' proposed amended complaint should be denied because they propose to dismiss all claims arising under federal law in an attempt to divest the Court of jurisdiction. The Court finds no merit to the City's arguments in this regard for a few reasons. "The plaintiff is the master of the complaint" and, as such, "selects the claims that will be alleged in the complaint." *See United States v. Jones*, 125 F.3d 1418, 1428 (11th Cir. 1997). Nevertheless, "a plaintiff may not compel remand by amending a complaint to eliminate the federal question upon which removal was based." *Rice v. CRST Int'l Enter.*, No. 5:14-CV-00148-ODW, 2014 WL 988805, at *2 (C.D. Cal. Mar. 13, 2014) (citation omitted). Instead, following dismissal of federal claims, a court maintains discretion over whether or not to continue exercising supplemental jurisdiction over state law claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 640 (2009). Accordingly, Plaintiffs' voluntary dismissal of all federal claims would not, *ipso facto*, divest this court of jurisdiction.

6

The City next argues that Plaintiffs' due process claims under the Ohio Constitution are futile because the due process provision of the Ohio Constitution is not a "self-executing" provision and does "not create [an] independent cause of action." *See PDU, Inc. v. City of Cleveland*, No. 81944, 2003 WL 21555157, at *5 (Ohio Ct. App. July 10, 2003). Certainly, federal courts have held that "[t]here is no Ohio statute that is analogous to § 1983 that creates an independent cause of action to remedy violations of the Ohio Constitution." *Harris v. Butler Cty., Ohio*, No. 1:07CV069, 2008 WL 4186316, at *8 (S.D. Ohio Sept. 3, 2008), *aff'd sub nom. Harris v. Butler Cty., Ohio ex rel. its Sheriff's Dep't*, 344 F. App'x 195 (6th Cir. 2009). In their reply memorandum, Plaintiffs offer no rebuttal to the City's contention in this regard. As a result, the Court finds the City's argument well-taken. In other words, amending the complaint to set forth a due process claim under only the Ohio Constitution would be futile.

Defendants also argue that including a claim for tortious interference with a business relationship under Ohio law is futile because the City is immune from such claims. *See* doc. 21 at PageID 459. Plaintiffs argue that because they assert malicious conduct on the part of the City, *see* doc. 13-1 at PageID 376, and Ohio Rev. Code § 2744.06(A)(6) applies as an exception to immunity. *See* doc. 28 at PageID 656. In support, Plaintiffs cite *Paige v. Coyner*, 867 F. Supp.2d 975, 984 (S.D. Ohio 2012). Plaintiffs misconstrue the analysis set forth by the Court in *Paige*. There, the Court concluded that, as a matter of law, the political subdivision itself was immune from state law claims, including tortious interference claims, and that such claims must be dismissed. *Id*. The Court did, however, apply Ohio Rev. Code § 2744.06(A)(6) in concluding that a question of fact remained as to whether an *employee* of the political subdivision was immune from such claims. *Id*. 984-85. Plaintiffs have not named any city employee as a defendant in this case and do not propose to do so in their amended complaint. Because the City

7

itself is immune from liability on a tortious interference claim, amending the complaint to continue to set forth such a claim would be futile. *See Dolan v. City of Glouster*, 879 N.E.2d 838, 845 (Ohio Ct. App. 2007) (stating that "Ohio courts specifically hold that 'a political subdivision is immune from a claim of intentional interference with business interests'").

Next, Defendants argue that Plaintiffs' motion for leave to amend should be denied because they seek punitive damages which are not recoverable against the City. As noted above, Plaintiffs' proposed amended complaint seeks to assert only state law claim. However, under Ohio law, "in an action against a political subdivision to recover damages for injury, death, or loss to person or property caused by an act or omission in connection with a governmental or proprietary function . . . [p]unitive or exemplary damages shall not be awarded[.]" Ohio Rev. Code § 2744.05(A). Plaintiffs' only argument in opposition is that "[p]unitive damages can be recovered against an employee of the municipality." Doc. 28 at PageID 657. Again, neither Plaintiffs' original complaint nor their proposed amended complaint names any individual employee as a party.

Based upon all of the foregoing, Plaintiffs' motion is **DENIED WITHOUT PREJUDICE** to refiling. The Court notes that Plaintiffs, in their reply memorandum, set forth their intent to further amend the complaint to add individual employees once they identify those individuals in discovery. Insofar as certain claims may become viable upon identification and inclusion of individual employees as parties to this case, Plaintiffs are not foreclosed from attempting to add certain claims or damage requests at that time if supported by law.

## IV.

Finally, the Court addresses the City's motion to terminate or limit depositions and to permit a "clawback" of privileged attorney-client communications. Doc. 27. This dispute arose

during a deposition of Tipp City's City Manager, Timothy Josh Eggleston, when Plaintiffs' counsel questioned Mr. Eggleston regarding documents produced in discovery that the City contends are protected by the attorney-client privilege. Counsel for the parties contacted the Court on October 28, 2016 when the dispute arose during the deposition. The Court held a hearing on the concerns at that time and ordered the parties to submit briefing on the issues. The parties then timely submitted simultaneous briefing in that regard. Docs. 26, 27. The City's motion is now fully briefed and ripe for decision by the Court.

Prior to and during the pendency of this case, Plaintiff Judith Tomb has made numerous public records requests from the City. *See* doc. 26 at PageID 566. According to the City, Ms. Tombs requests for public records number approximately 200. *See* doc. 27 at PageID 609. The City has created a "Public Records Request Log" documenting Ms. Tombs requests. Doc. 23-1. That document is 42 pages long. *Id*. In response to those requests, Plaintiffs estimate that the City has produced "over twenty thousand documents (20,000) documents." Doc. 26 at PageID 566. Subsequent to the City's production of documents responsive to Plaintiffs' public records requests, the City also marked those documents as responsive to Plaintiffs written requests for documents in the discovery phase of this litigation. *See* doc. 26-3 at PageID 575-76. At this time, Plaintiffs have identified four of the approximately 20,000 documents that the City claims are privileged. *See* docs. 26-6, 26-7, 26-8, 26-9.

    A.    **Violation of Rule 26(b)(5)(B) by Plaintiffs and Plaintiffs' Counsel**

Before reaching the issue of privilege and potential waiver, the Court first addresses concerns with the conduct of Plaintiffs and counsel after the City's claim of privilege regarding the documents at issue. Although many documents were produced in response to hundreds of public records requests, those documents were also incorporated by reference as produced in

response to Plaintiffs' Rule 34 document requests in this case. *See* doc. 26-3. As a result, the Court concludes that Rule 26 applies to the production of documents at issue here.

Specifically, Rule 26 states that:

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

Fed. R. Civ. P. 26(b)(5)(B).

Based upon the record before the Court, it appears that Plaintiffs and their counsel have failed to comply with each of the requirements set forth in Rule 26(b)(5)(B). Plaintiffs and their counsel, upon the City's claim of privilege, did not "return, sequester, or destroy the specified information and any copies it has." *See id*. Because Plaintiffs and counsel oppose the City's claim of privilege, they, at the least, were required to "sequester" the information, "not disclose the information until the claim [of privilege] is resolved." *Id*. They failed to do so.

Such failure is demonstrated by Ms. Tomb's email of October 31, 2016 -- three days after the deposition in which the City claimed privilege -- in which Ms. Tomb disseminated documents at issue via email to Mr. Eggleston and 14 other individuals. Doc. 27-6 at PageID 650. Ms. Tomb further represented that she had also "disseminated choice correspondence to numerous members of the community (which I am certain are forwarding it to others)[.]" *Id*. Presumably, given the context of Ms. Tomb's email, the "choice correspondence" referenced includes materials the City claims are privileged. *Id*. Unless disseminated prior to the claim of privilege, such conduct is a further violation of Rule 26's requirement to "not use or disclose the

information until the claim [of privilege] is resolved." *See* Fed. R. Civ. P. 26(b)(5)(B). To the extent Ms. Tomb "disseminated the choice correspondence" before the claim of privilege was asserted, Plaintiffs' counsel present no evidence that they took any steps to retrieve the information. Further, Plaintiffs' counsel also violated Rule 26 by attaching the subject documents to their memorandum and filed them as public docket without seeking leave to submit them under seal[.]" *Id.*

Put simply, and as set forth above, Ms. Tomb's email evidences both her and her attorneys' violation of Rule 26(b)(5)(B). A violation of Rule 26(b)(5)(B) is sanctionable conduct. *See Cmty. Bank v. Progressive Cas. Ins. Co.*, No. 1:08CV01443WTLJMS, 2010 WL 1435368, at *4 (S.D. Ind. Apr. 8, 2010), *on reconsideration in part*, No. 108-CV-01443-WTL-JMS, 2010 WL 2484306 (S.D. Ind. June 14, 2010). The Court, troubled by the apparent conduct of Ms. Tomb and her attorneys in this regard, hereby **ORDERS** that Ms. Tomb and her counsel of record **SHOW CAUSE**, in writing and on or before **December 5, 2016** as to why sanctions should not issue against them. The City may file a response to the written submission of Ms. Tomb and her attorneys on or before **December 19, 2016**. The Court anticipates that no reply memoranda will be filed in the absence of leave.

    **B.**    **Privilege**

Next, the Court addresses whether the documents are privileged. Because this case is before the Court on federal question jurisdiction, federal law governs issue of privilege. *See Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992) (holding that, "[s]ince the instant case is a federal question case . . . the existence of pendent state law claims does not relieve us of our obligation to apply the federal law of privilege"). Information is protected by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998).  The party asserting privilege bears the burden of proving that the privilege applies.  *See Ross v. City of Memphis*, 423 F.3d 596, 606 (6th Cir. 2005); *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002).

Here, the City asserts privilege and argues that the documents were inadvertently disclosed.  Noticeably absent from the City's motion, however, is any argument or citation to authority supporting the assertion that the attorney-client privilege applies.  For some or all of the documents, the application of the *attorney-client* privilege is not evident on its face.[3]  For example, one document purports to be advice from the City's Director of Law to three individuals regarding preparation for depositions, but there is no information as to who the three individuals are and whether they fall within the definition of "client."  *See* doc. 26-7 at PageID 587.  Another document contains a string of emails, only two emails of which appear to be between the City's Director of Law and outside counsel; the remainder appearing to either be to or from Plaintiffs' counsel.  *See* doc. 26-8 at PageID 590-97.  Finally, one document is an email, portions of which are barely legible and others wholly illegible, from Mr. Eggleston to Mr. Lantz.  *See* doc. 26-9 at PageID 598.  Mr. Eggleston's email, upon first blush, appears to fall within the confines of the attorney-client privilege, but the Court cannot be sure without proper context explained by the City and/or Mr. Eggleston.

---

[3] Notably, the City has *not* asserted application of the work-product privilege.

In the interests of justice, the Court **ORDERS** supplemental briefing from the City regarding application of the attorney-client privilege to the documents at issue. Said supplemental memorandum shall be filed on or before **December 5, 2016**. Plaintiffs may file a memorandum in opposition to Plaintiffs' supplemental memorandum on or before **December 19, 2016**. The undersigned does not anticipate permitting reply memoranda in the absence of leave.

Based upon all of the foregoing, Plaintiffs' motion is **DENIED WITHOUT PREJUDICE** to refiling.

**V.**

Accordingly, the Court **ORDERS** that:

(1) the Court's Order to Show Cause (doc. 9) regarding subject matter jurisdiction is **VACATED**;

(2) Plaintiffs' motion for leave to file an amended complaint (doc. 13) is **DENIED WITHOUT PREJUDICE**;

(3) Plaintiff Judith Tomb and Plaintiffs' counsel **SHOW CAUSE** in writing and on or before **December 5, 2016** as to why sanctions should not issue for violation of Fed. R. Civ. P. 26(b)(5)(B); and

(4) The City file a supplemental memorandum regarding privilege on or before **December 5, 2016**.

**IT IS SO ORDERED.**

Date:   November 21, 2016              s/ Michael J. Newman
                                       Michael J. Newman
                                       United States Magistrate Judge