UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

TALISMANIC PROPERTIES, LLC, *et al.*,

      Plaintiffs,                     Case No. 3:16-cv-285

      vs.

TIPP CITY, OHIO,                       Magistrate Judge Michael J. Newman
                                                 (Consent Case)
      Defendant.

---

**DECISION AND ENTRY: (1) DENYING DEFENDANT'S MOTION TO "CLAWBACK" PRIVILEGED COMMUNICATIONS (DOC. 27); (2) VACATING THE COURT'S PREVIOUS ORDER TO SHOW CAUSE (DOC. 37); (3) DENYING DEFENDANT'S MOTION TO TERMINATE OR LIMIT DEPOSITIONS (DOC. 27); AND (4) DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION FOR LEAVE TO TAKE MORE THAN TEN DEPOSITIONS (DOC. 16)**

---

      This civil consent case is before the Court on the following motions filed by the parties: (1) Plaintiffs' motion for leave to take more than ten depositions (doc. 16); and (2) Defendant Tipp City's ("the City") motion to terminate or limit depositions and to permit the "clawback" of privileged attorney-client communications (doc. 27). With regard to the motion for leave, the City filed a memorandum in opposition (doc. 23) and Plaintiffs filed a reply (doc. 31). With regard to the City's motion to terminate depositions and to permit the "clawback" of privileged communications, the parties have filed a number of memoranda related thereto, including Plaintiffs' response to the Court's Order to Show Cause (as to why sanctions should not issue as a result of Plaintiffs' apparent violation of Fed. R. Civ. P. 26(b)(5)(B)). *See* docs. 26, 37, 39-42. The Court has carefully reviewed all of the foregoing documents -- including attachments thereto -- and these motions are now ripe for decision.

**I.**

This case concerns a dispute arising out of the development of the Cedar Grove subdivision in Tipp City, Ohio.  Doc. 5.  This is not the first dispute between the parties and, in fact, the parties were previously involved in litigation in the Miami County, Ohio Court of Common Pleas that resulted in a settlement agreement.  *See* doc. 5 at PageID 146.  This suit concerns alleged acts undertaken by the City after the previous settlement.  *Id*.  The claims asserted by Plaintiffs include alleged constitutional violations, pursued under 42 U.S.C. § 1983, and a breach of the aforementioned settlement agreement.  *Id*. at PageID 151-59.

Prior to and during the pendency of this case, Plaintiff Judith Tomb has made numerous public records requests directed to the City.  *See* doc. 26 at PageID 566.  According to the City, Ms. Tomb's requests for public records number approximately 200.  *See* doc. 27 at PageID 609.  The City has created a log documenting Ms. Tomb's requests.  Doc. 23-1.  That document is 42 pages long.  *Id*.  In response to those requests, Plaintiffs estimate that the City has produced "over twenty thousand documents (20,000) documents."  Doc. 26 at PageID 566.  It is not entirely clear, however, whether the City made a record of what specific documents were actually produced to Plaintiffs in response to any of their public records requests.

In addition to public records requests, Plaintiffs have propounded and served written discovery requests to the City in this litigation.  *See* doc. 27-5.  In response to Plaintiffs' requests for the production of documents, the City produced some information via an electronic media device (presumably a compact disc or thumb drive).  *See* doc. 27-5 at PageID 637.  The City also represented that documents produced to Plaintiffs in response to their public records requests were responsive to Plaintiffs' written requests for the production of documents.  *See id*.  The City, however, did not reproduce those documents to Plaintiffs and never specifically identified which previously produced public records were also responsive to each Rule 34 request for the production of documents.  *See id*.

The City now asserts that four privileged emails were inadvertently produced. *See* doc. 40 at PageID 1493-96. Plaintiffs provide unrebutted testimony that such documents were produced by the City in response to their public records requests, and were not produced or otherwise reproduced in the City's Rule 34 discovery responses. *See* doc. 26-10 at PageID 599. The City's attorneys were unaware of the disclosure of any privileged documents until October 28, 2016, when Plaintiffs' counsel presented an email (doc. 26-9) as an exhibit during the deposition of Tipp City's City Manager, Timothy Josh Eggleston. Upon questioning by Plaintiffs' counsel, the City's outside counsel objected and asserted a claim of attorney-client privilege as it relates to that email. *See* doc. 23-2. Immediately thereafter, the deposition was suspended and counsel jointly contacted the Court to raise the dispute for informal resolution. The Court held a status hearing by telephone, heard argument from all parties, and ordered briefing on the issues.

On October 31, 2016, Plaintiff Judith Tomb sent an email to Eggleston concerning this litigation and attaching and/or referencing[1] three additional emails the City produced in response to public records requests.[2] *See* doc. 27-6 at PageID 650. Ms. Tomb copied at least fourteen other people on that email, at least one of whom (Colleen Eidenmiller) is neither a party to this case nor employed by a party in this case. *Id.*; *see also* doc. 39 at PageID 1460.

---

[1] The Court makes no finding at this time concerning the appropriateness of a party directly communicating with a represented adversary about the subject matter of the litigation between them.

[2] Thus, there are a total of four documents currently at issue. The first document at issue is an email between the City's Law Director and the City's outside litigation counsel, in which litigation counsel provided his opinion regarding depositions taken in previous litigation between Plaintiffs and the City. Doc. 26-6. The second document is an email from the City's Law Director to City Council members containing deposition preparation instructions to members of the City Council. Doc. 26-7. The third document at issue contains two emails: (1) from the City's Law Director and outside counsel regarding clarification of case strategy; and (2) an email from outside counsel Edward Dowd to the City's Law Director complementing the Law Director on his civil discourse with Plaintiff's counsel and noting, in derogatory terms, that Mr. Dowd's response would not have been as civil and restrained in so responding. Doc. 26-8 at PageID 590. The fourth document is an email from City Manager Timothy Eggleston to outside counsel. Doc. 26-9. This fourth document is the document that became an issue during Eggleston's deposition.

On November 3, 2016, as directed by the Court, the parties submitted simultaneous briefs concerning the issue of privilege. Docs. 26, 27. In their brief, Plaintiffs identified the three other emails referenced by Ms. Tomb in her October 31, 2016 email to Eggleston, and argued that any claim of privilege as to those emails is now waived as a result of the City's disclosure of those documents in response to public records requests. *See* doc. 26 at PageID 569-71; *see also* docs. 26-6, 26-7, 26-8, 26-9.

In its brief, the City moved to "clawback" privileged documents inadvertently disclosed to Plaintiffs. Doc. 27 at PageID 608-14. Notably, the City argued that certain documents known to it to have been disclosed to Plaintiffs[3] were protected by the attorney-client privilege. Doc. 27 at PageID 608-14. In addition, the City moved to terminate depositions in this case based upon the purportedly bad faith and oppressive conduct of Plaintiffs' counsel, Jeremy Tomb (Ms. Tomb's son). *Id.* With regard to allegations of bad faith, the City points to Attorney Tomb's conduct during Eggleston's deposition in which he suggested that Eggleston and the City's outside attorney had engaged in unidentified criminal conduct -- perhaps perjury -- and may want to assert their rights against self-incrimination under the Fifth Amendment. *See* doc. 23-2.

Subsequently, the Court ordered supplemental briefing regarding: (1) the apparent violation of Fed. R. Civ. P. 26(b)(5)(B) by Ms. Tomb and her attorneys when Ms. Tomb disseminated alleged privileged communications on October 31, 2017 and her attorneys filed those documents on the Court's docket on November 3, 2017; and (2) whether privilege extends to the disclosed emails. Doc. 37. Plaintiffs filed a response regarding application of Rule 26 to the disclosure at issue (doc. 39), and the City filed a supplemental memorandum regarding application of privilege (doc. 42).

_____

[3] By the time the City filed its motion (doc. 27) on November 3, 2016, it was aware that all four of the emails presently at issue had been disclosed to Plaintiffs, at the least, by virtue of Ms. Tomb's reference to those emails in her email to Eggleston on October 31, 2016. *See* doc. 27-6 at PageID 650. In fact, the City attached Ms. Tomb's email to its motion. *Id.*

## II.

Because this case is before the Court on federal question jurisdiction, federal law governs issues of privilege. *See Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992). Information is protected by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998). "The work-product doctrine protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process." *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) (citing *Hickman v. Taylor*, 329 U.S. 495, 510-14 (1947)). Specifically, Fed. R. Civ. P. 26(b)(3) provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3).

Plaintiffs argue that, regardless of what privilege applies to the documents, the City waived all claims of privilege with regard to these documents when they produced them in response to public records requests. *See* doc. 26. The City argues that the documents were "inadvertently disclosed" and that the Court should permit the "clawback" of these documents by application of Fed. R. Evid. 502. Doc. 27 at PageID 608-14.

Prior to enactment of Evidence Rule 502, decisions in this District held that, in determining whether an inadvertent disclosure results in waiver, courts consider:

> (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production, (2) the number of inadvertent disclosures, (3) the extent of the disclosure, (4) the promptness of measures taken to rectify the disclosure, and (5) whether the overriding interests of justice would or would not be served by relieving the party of its error.

*See Nilavar v. Mercy Health Sys.-W. Ohio*, No. 399CV612, 2004 WL 5345311, at *3 (S.D. Ohio Mar. 22, 2004); *Hawkins v. Anheuser-Busch, Inc.*, No. 2:05-CV-688, 2006 WL 2040405, at *2 (S.D. Ohio June 19, 2006); *Evenflo Co. v. Hantec Agents Ltd.*, No. 3:05-CV-346, 2006 WL 2945440, at *5 (S.D. Ohio Oct. 13, 2006). In fact, a majority of courts throughout the country had taken the same position. *See* Fed. R. Evid. 502, Advisory Committee Notes (Nov. 28, 2007). Effective September 19, 2008, Evidence Rule 502(b) formally adopted this majority view. *Id.*

Evidence Rule 502(b) states that the disclosure of privileged information "in a federal proceeding does not operate as a waiver . . . if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Fed. R. Evid. 502(b). But, because the plain language of Evidence Rule 502(b) governs disclosures made "in a federal proceeding," and the disclosures at issue here were made initially in response to public records requests pursuant to Ohio Rev. Code § 149.43, the "clawback" provision of Evidence Rule 502(b) arguably does not apply. *See U.S. Fire Ins. Co. v. City of Warren*, No. 2:10-CV-13128, 2012 WL 1454008, at *6 (E.D. Mich. Apr. 26, 2012).

Even if Evidence Rule 502(b) does not technically apply, the Court would nevertheless apply the inadvertent disclosure precedent relied upon by Courts in this District before Rule 502's effective date. *See Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 500-02 n.20 (2009) (applying Evidence Rule 502 to Freedom of Information Act disclosures where the "the parties involved in the prelitigation disclosure [were] identical to the parties in [the] suit" and where the reasonable steps test was, nevertheless, the settled precedent of that court before enactment of Evidence Rule 502(b)").

Without exhaustively analyzing every factor, the Court makes the following findings: With regard to "the measures taken to prevent disclosure[,]" *see Nilavar*, 2004 WL 5345311, at *4, all of the purportedly privileged documents produced in this case are emails. *See* docs. 26-6, 26-7, 26-8, 26-9. According to Douglas Arnold, Tipp City's Information Technology Manager, when a search of email is required to respond to a public records request, the City searches their email archiving system -- containing over 2,000,000 emails -- using keywords. *See* doc. 27-4 at PageID 623-24. The City presents no evidence that any person performs any further review of those search results for potential privileged information before producing them -- such as a review for emails sent or received by the City's in-house or outside attorneys.

Absent evidence showing any steps taken to review the product of email search results for privileged material, the undersigned is unable to conclude that the City's precautions in this regard are "adequate." Thus, such factor weighs against the City. *See Nilavar*, 2004 WL 5345311, at *4 (stating that "this factor weighs in favor of the party resisting waiver, [where] that party has typically demonstrated that it used some sort of system to segregate privileged material from non-privileged material that, though well-fashioned, happened to fail in the particular instance").

With regard to "the magnitude of the document production involved in [this] particular case[,]" *see Nilavar*, 2004 WL 5345311, at *4, the City has produced over 20,000 documents in response to approximately 200 public records requests. Doc. 26 at PageID 566. The Court appreciates the breadth of the City's overall production to Ms. Tomb's numerous requests, and acknowledges that the number of allegedly privileged documents inadvertently disclosed (four emails) is miniscule in comparison. However, the magnitude of the specific "production" among the approximate 200 "productions" leading to the inadvertent disclosure is the relevant inquiry. *Nilavar*, 2004 WL 5345311, at *4 (noting that courts have distinguished "document productions

7

in response to different subpoenas in order to discern the correct calculus for determining the scope of production") (citing *United States ex rel. Bagley v. TRW, Inc.*, 204 F.R.D. 170, 180 (C.D. Cal. 2001)).

Here, the City presents no information as to whether the purportedly privileged documents were included among an individual production of 10 documents or an individual production of 10,000 documents. Thus, having failed to meet its burden, such factor weighs against the City.[4] The lack of detail concerning such information not only deprives the Court of the ability to assess the magnitude of any particular production, but also whether or not there was a "large number of inadvertent disclosures in comparison to the number of documents reviewed[,]" *Nilavar*, 2004 WL 5345311, at *5, if indeed any separate review for privileged information was even conducted in advance of production.

Finally, Plaintiffs represent that, after receiving the purportedly privileged information, they, in turn, produced the allegedly privileged emails back to the City when responding to the City's request for documents under Civil Rule 34. *See* doc. 26 at PageID 568. Plaintiffs further represent that this production occurred approximately two months before depositions commenced. *See* doc. 26 at PageID 568. The City has not refuted Plaintiffs' counsel's representations in this regard. Thus, there is a question as to whether the City took prompt measures to rectify the situation after they should have learned of the inadvertent disclosures.

Accordingly, based upon the foregoing, the undersigned finds that the City and counsel have waived attorney-client privilege and work product protection with regard to the four emails as issue in this case.

---

[4] The City appears to not have made any record of what it actually produced to Ms. Tomb in response to her public records requests.

### III.

The Court next addresses the issue regarding Ms. Tomb's dissemination of information after being notified of the City's claim of privilege, as well as Plaintiffs' counsels' filing of purportedly privileged material on the Court's docket.  *See* docs. 26-6, 26-7, 26-8, 26-9, 27-6.

Rule 26 states that:

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

Fed. R. Civ. P. 26(b)(5)(B).  As set forth in the Rule, regardless whether or not the information is ultimately found to be privileged, parties in receipt of purportedly privileged material are required to, at the very least, "sequester" such "specified information . . . until the claim is resolved[.]"  *Id.*  Further, if such purportedly privileged information is presented to the Court before determination of such claim of privilege, Rule 26 contemplates the filing of purportedly privileged information "under seal[.]"  *Id.*

Here, Plaintiffs argue that the City: (1) failed to make a sufficient claim of privilege in advance of any disclosure; and (2) that Rule 26 does not apply here because the purportedly privileged material was produced in response to public records requests, not "in discovery" as required by the text of the Rule.  *See* Fed. R. Civ. P. 26(b)(5)(B).

With regard to the sufficiency of the City's claim of privilege, the Court agrees with Plaintiff that, before October 31, 2016, the City made no claim as it relates to docs. 26-6, 26-7, and 26-8.  Thus, prior to Ms. Tomb's October 31st email, the City made a specific claim of privilege only with regard to a single email at issue; namely, Eggleston's email to counsel.  Doc.

26-9.  The City's claim of privilege concerning that email was sufficiently clear.  *See* doc. 23-2. Thus, at this time, the Court narrows the issues before it to include whether: (1) Ms. Tomb violated Rule 26(b)(5)(B) when she attached Eggleston's email to her October 31st email; and (2) counsel violated Rule 26(b)(5)(B) by attaching Eggleston's email to memoranda filed on the Court's public record on November 3, 2017.  *See* doc. 27-6 at PageID 651.

With regard to the applicability of Rule 26(b)(5)(B) to the circumstances here, the Court acknowledges that the Eggleston email was, at least initially, produced in response to public records requests, not as part of the discovery mechanisms set forth in the Civil Rules.  *See* doc. 26-10.  Courts have concluded that Rule 26(b)(5)(B) does not apply to "emails . . . produced before [the] action was filed, in response to a request under the state Open Records Act." *McCraw v. City of Oklahoma City*, No. CIV-16-352-HE, 2017 WL 486950, at \*2 n.4 (W.D. Okla. Feb. 6, 2017).

Although the Court acknowledges that Eggleston's email was initially produced in response to public records requests, it was also subsequently produced in discovery, as acknowledged by Plaintiffs' admission that, "[a]fter these documents were provided to Ms. Tomb, Plaintiffs provided the very same documents to Defendant in response to their written discovery requests (nearly two months before any depositions started in this matter)."  Doc. 26 at PageID 568.  Thus, strictly reading the text of Rule 26(b)(5)(B), the Court concludes that Plaintiffs' own production of Eggleston's email in discovery makes Rule 26(b)(5)(B) applicable in this instance.

Nevertheless, given the reasonable position set forth by Plaintiffs, *i.e.*, that Rule 26(b)(5)(B) does not apply to information produced in response to public records requests, the Court finds sanctions for such violations unwarranted.  As a result, the Order to Show Cause (doc. 37) is **VACATED**.

## IV.

The City also moves to terminate or limit Eggleston's deposition and all other depositions Plaintiffs seek to take in this case because of Mr. Tomb's suggestion that Eggleston and the City's outside counsel "might want to plead the Fifth." *See* doc. 23-2 at PageID 516-17. During a conference call with the Court, Mr. Tomb represented that his comment about the Fifth Amendment was made "jokingly." Doc. 23-2 at PageID 524.

Pursuant to Rule 30, "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A). At this juncture, the Court finds that Mr. Tomb's conduct -- though certainly not condoned by the Court -- is not sufficient to terminate Eggleston's deposition in its entirety. As a result, the City's motion to terminate or limit depositions (doc. 27) is **DENIED** and depositions should promptly recommence.

Mr. Tomb's admission on the record, however, that his comment concerning the Fifth Amendment was made "jokingly" does lend credence to the suggestion that Mr. Tomb was acting to unreasonably "annoy" and "embarrass" both Eggleston and defense counsel. The suggestion that someone has engaged in criminal conduct while engaged in a court proceeding is no joking matter. The Court **ADVISES** Mr. Tomb that such further conduct may lead to the imposition of sanctions in this case and, therefore, he should conduct himself with the utmost civility and professionalism going forward. *See* Introductory Statement on Civility contained in the S.D. Ohio Local Rules.

## V.

Finally, Plaintiff moves for leave to conduct more than the ten depositions permitted by Fed. R. Civ. P. 30. Under that Rule "[a] party must obtain leave of court, and the court must

grant leave to the extent consistent with Rule 26(b)(1) and (2)" where a party seeks to take "more than 10 depositions" and the parties have not so agreed and stipulated. *See* Fed. R. Civ. P. 30(a)(2)(A)(i); *see also Moore v. Abbott Labs.*, No. 2:05-CV-1065, 2009 WL 73876, at *1 (S.D. Ohio Jan. 8, 2009) (stating that, "absent permission of the opposing parties or leave of court, each party in a civil action is entitled to conduct only 10 depositions").

"Because this limit is intended to curb abusive discovery practices, it stands to reason that a party wishing to conduct more than 10 depositions has the burden of persuading the court that these additional depositions are necessary." *Id*. Further, "the moving party must make a particularized showing why extra depositions are necessary." *Id*. "A district court has the discretion (and perhaps the obligation) to deny leave to take additional depositions when no good reason to do so has been presented." *Id*.

Here, Plaintiffs' motion requested leave merely because the City had identified more than 10 individuals who may possess potentially discoverable information. *See* doc. 16 at PageID 404-05. However, "the mere fact that more than ten individuals may have discoverable information in a case does not mean that taking more than ten depositions makes sense." *United States v. Goertz*, No. A-09-CA-179 LY, 2010 WL 2900309, at *1 (W.D. Tex. July 20, 2010); *see also Smith v. Ardew Wood Prod., Ltd.*, No. C07-5641 FDB, 2008 WL 4837216, at *1 (W.D. Wash. Nov. 6, 2008) (stating that "[t]he number of potential witnesses and the mere possibility that they may favor the Plaintiff does not justify deposing every one").

In their reply, Plaintiffs set forth more detail concerning their request. Namely, Plaintiffs suggest that the four depositions taken by them to date have not been particularly fruitful in obtaining the information they seek. *See* doc. 31 at PageID 679 (stating that "the Tipp City officials who have been deposed to date have limited information about the overall Tipp City operation, and each only has a small portion of the information sought by the Plaintiffs in this

case"). However, Plaintiffs fail to state with any particularity who specifically must be deposed, other than suggesting the need to depose Tipp City's electrical superintendent and, perhaps, someone else in the electric department (assuming the Tipp City electrical superintendent himself or herself is insufficient). Having taken four depositions to date, and having only identified the need for, perhaps, two more depositions, Plaintiffs fail to satisfy their burden to demonstrate a particularized need for more than ten depositions.

As a result, Plaintiffs' motion for leave (doc. 16) is **DENIED WITHOUT PREJUDICE TO REFILING** with a more particularized showing.

## VI.

For the foregoing reasons, the Court: (1) **DENIES** the City's motion to "clawback" privileged communications (doc. 27); (2) **VACATES** the Court's previous Order to Show Cause (doc. 37); (3) **DENIES** the City's motion to terminate or limit depositions (doc. 27); and (4) **DENIES** Plaintiffs' motion for leave to take more than ten depositions **WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

Date:   March 7, 2017                              s/ Michael J. Newman
                                                   Michael J. Newman
                                                   United States Magistrate Judge