UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

TALISMANIC PROPERTIES, LLC, *et al.*,

    Plaintiffs,

vs.

CITY OF TIPP CITY, OHIO,

    Defendant.

Case No. 3:16-cv-285

Magistrate Judge Michael J. Newman
(Consent Case)

**DECISION AND ENTRY: (1) GRANTING DEFENDANT'S MOTION FOR A PROTECTIVE ORDER; AND (2) DIRECTING DEFENDANT TO FILE A MOTION FOR REASONABLE EXPENSES, INCLUDING ATTORNEY'S FEES, UNDER FED. R. CIV. P. 37(a)(5) WITHIN 21 DAYS FROM THE ENTRY OF THIS ORDER**

This civil consent case is before the Court on Defendant's motion for protective order. Doc. 57. Plaintiffs filed a memorandum in opposition to Defendant's motion. Doc. 58. Thereafter, Defendant filed a reply. Doc. 60. Defendant's motion is now ripe for decision.

This case concerns a dispute arising out of the development of the Cedar Grove subdivision in Tipp City, Ohio. Doc. 5. This is not the first dispute between the parties and, in fact, the parties were previously involved in litigation in the Miami County, Ohio Court of Common Pleas that resulted in a settlement agreement. *See* doc. 5 at PageID 146. This suit concerns alleged acts undertaken by the City after the previous settlement. *Id*. The claims asserted by Plaintiffs include alleged constitutional violations, pursued under 42 U.S.C. § 1983, and a breach of the aforementioned settlement agreement. *Id*. at PageID 151-59.

Since the filing of this case, this litigation has devolved into numerous protracted discovery disputes and at least one admonishment by the Court for the unprofessional conduct of Plaintiffs' counsel Jeremy Tomb (doc. 51 at PageID 1699), and the production of an unprofessional email authored by Defendant's attorney Ned Dowd in connection with previous litigation between the parties. *See* doc. 26-8 at PageID 590. The Court has some concern that the relationship between

counsel and their apparent personal dislike for each other has contributed not only to delays in the discovery process, but impeded the swift resolution of this case as a whole.

This current discovery dispute involves Plaintiff's request to depose: (1) opposing counsel Kevin Lantz; and (2) Defendant's City Council President Joseph Gibson regarding an executive session meeting to discuss pending litigation on February 21, 2017. Doc. 58. For the reasons set forth herein, Defendant's motion for a protective order is **GRANTED** and the Court will entertain from Defendant a motion for expenses, including attorney's fees, under Fed. R. Civ. P. 26 (c)(3) and 37(a)(5) within 21 days from the entry of this Order.

### A. Deposition of Attorney Kevin Lantz

The Sixth Circuit has set forth a legal framework by which requests to depose opposing counsel must be assessed by courts. *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). Neither party cites to this framework in their briefing.

"Taking the deposition of opposing counsel is not barred by the Federal Rules of Civil Procedure, but because of its obvious hazards to the ability of an attorney to properly represent his client[,] such discovery is disfavored." *Avis Rent A Car Sys., LLC v. City of Dayton, Ohio*, No. 3:12-CV-399, 2013 WL 3778922, at *2 (S.D. Ohio July 18, 2013) (citation omitted). Because the request to depose counsel is such an "extraordinary" request, the need for such "deposition must be justified by the party [requesting] it[,]" *i.e.*, *it is Plaintiffs' burden* in this case to justify deposing Attorney Lantz. *Id.*; *see also E.E.O.C. v. Pointe at Kirby Gate, LLC*, 290 F.R.D. 89, 91 (W.D. Tenn. 2003) (citation omitted) (stating that, "[b]ecause [a] deposition of a party's attorney is usually both burdensome and disruptive, the mere request to depose a party's attorney constitutes good cause for obtaining a . . . protective order unless the party seeking the deposition can show both the propriety and need for the deposition"). To justify such a deposition, Plaintiffs must show: "that (1) no other means exist to obtain the information . . . ; (2)

the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Nationwide*, 278 F.3d at 628 (citing *Shelton*, 805 F.2d at 1327).

Here, Plaintiffs argue only that they should be permitted to depose Attorney Lantz because privilege has allegedly been waived with regard to Plaintiffs' counsel's anticipated areas of inquiry. *See* doc. 58 at PageID 1759-60. The existence or non-existence of privilege, however, are not the only factors to be considered by the Court. *See Nationwide*, 278 F.3d at 628. Plaintiffs present no argument or explanation as to: (1) the relevance of the information sought from Attorney Lantz to the claims or defenses at issue in this lawsuit; (2) whether or not the information sought from Attorney Lantz can be obtained by other means; or (3) whether the information sought from Attorney Lantz is crucial to Plaintiffs' preparation of this case. Even assuming privilege has been waived -- and it does not appear that privilege has been waived with regard to the executive session on February 21, 2017, *see infra* -- the Court cannot find that sole factor weighs in favor of permitting a deposition of Attorney Lantz.

Specifically, with regard to the emails at issue, only one appears to have any apparent relevance to the claims and defenses at issue in *this* case -- the email from Timothy Eggleston to Kevin Lantz. *See* doc. 26-9 at PageID 598. The other emails concern depositions taken in previous, settled litigation between the parties (docs. 26-6, 26-7), and one email discussion regarding the previous litigation which contains the aforementioned remark by Attorney Dowd regarding Mr. Tomb and Plaintiff Judith Tomb (doc. 26-8) (Notably, Plaintiffs do not seek to depose Dowd). Aside from the Eggleston email, the relevance of these communications to the claims or defenses in this case is not apparent to the Court, and Plaintiffs make no effort to explain such relevance in their briefing. Further, it appears that the information sought by Plaintiffs can be obtained from other sources such as Eggleston -- assuming relevance, waiver of privilege, and other relevant considerations.

Based on all of the foregoing, it is not readily apparent from Plaintiffs' briefing how Attorney Lantz's requested testimony is crucial, or even marginally needed, for Plaintiffs' preparation of this instant case. Accordingly, because Plaintiffs have failed to meet their burden to justify deposing opposing counsel, the Court **GRANTS** Defendant's motion for a protective order regarding the deposition of Attorney Lantz, or any other attorney in this case.[1] The Court does not anticipate revisiting this issue and expects that the parties will continue to complete discovery promptly.

B.  **Deposition of Joseph Gibson**

With regard to the deposition of Joseph Gibson, Plaintiffs seek such deposition to ask about "what occurred during" an executive session meeting of the City Council on February 21, 2017. *See* doc. 57-2 at PageID 1723. Specifically, Plaintiffs seek to discover from Mr. Gibson why the City decided "not to mediate" this pending case, arguing that the City Council waived privileges associated with the meeting by not complying with the requirements of Ohio's Open Meetings Act ("OMA"), Ohio Rev. Code §121.22(G) -- namely, by entering executive session without a purported motion and vote to do so.[2] *Id*.

The Court first notes that, as pointed out by Defendants, there are multiple privileges associated with the City Council's discussions in executive session; namely, an executive session privilege arising under the Ohio Revised Code, and the attorney-client privilege. *See Humphries v.*

---

[1] From the Court's perspective, this disposition renders moot Defendant's concerns regarding Plaintiffs' failure to identify specific documents they seek to depose Attorney Lantz about.

[2] Plaintiffs also make reference to a purported executive session of the City Council on March 6, 2017 to discuss "Imminent Litigation." *See* doc. 58-2 at PageID 1766. It is not clear to the Court that Plaintiffs seek to discover information related to this executive session. First, that executive session on March 6th appears to have concerned "imminent litigation," whereas this case is "pending litigation," as is noted in the February 21, 2017 meeting minutes. *See* doc. 60-1 at PageID 1784. Second, Plaintiffs seek to inquire of Mr. Gibson about the City Council's "decision not to mediate" (doc. 58 at PageID 1758) and "what occurred during [the] meeting" in which such decision was made. *Id*. at PageID 1753. The evidence before the Court shows that City Council considered whether to mediate during the February 21, 2017 executive session (*see* doc. 57 at PageID 1708) and Defendant's attorney informed Plaintiffs' counsel of the City Council's decision the next day, *i.e.*, February 22, 2017. *See* doc. 57-1 at PageID 1721. Thus, the information concerning "imminent litigation" discussed on March 6, 2017 appears to have no relevance to this case.

*Chicarelli*, 554 F. App'x 401, 401-02 (6th Cir. 2014) (noting existence of both an executive session privilege under Ohio Rev. Code § 102.03(B) and the attorney-client privilege). Plaintiffs' sole argument in this case is that Defendants waived both the executive session and the attorney-client privileges by failing to follow the necessary procedures of Ohio Rev. Code § 121.22(G). Unfortunately, Plaintiffs cites no authority to support such contention.[3]

Setting aside the foregoing for a moment, the Court addresses the substance of Plaintiffs' arguments concerning compliance with Ohio's OMA. Under the Ohio Revised Code, "[a]ll meetings of any public body are declared to be public meetings open to the public at all times." Ohio Rev. Code § 121.22(C). There are, however, a number of exceptions to the open meetings requirement, one exception being the holding of an executive session "with an attorney for the public body concerning disputes involving the public body that are the subject of pending or imminent court action." Ohio Rev. Code § 121.22(G)(3). Without dispute, a meeting by Defendant's City Council to discuss whether or not to mediate this case would qualify for the exception set forth in Ohio Rev. Code § 121.22(G)(3).

Plaintiffs argue, however, that the City Council failed to follow the necessary procedural steps of moving and voting before entering into the executive session.[4] Doc. 58 at PageID 1756-58. In making such statement, Plaintiffs purport to reference Council's "minutes" for that meeting. *See id*. However, Plaintiffs actually reference the meeting's agenda, not the meeting

---

[3] As previous stated by the undersigned, because this case is before the Court on federal question jurisdiction, federal law -- not the provisions of the Ohio Revised Code -- govern issues of privilege. *See Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992) (holding that, "[s]ince the instant case is a federal question case . . . the existence of pendent state law claims does not relieve us of our obligation to apply the federal law of privilege").

[4] Plaintiffs also appear to argue that the City's decision to not engage in mediation constituted a "formal action" by the Council, but cite no authority in support for such contention or develop any argument as to why the requested discovery should be permitted as a result. In the absence of any developed argumentation in this regard, the Court deems this issue waived by Plaintiffs. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

5

minutes. Doc. 58-1 at PageID 1764. On the other hand, Defendants point to the actual meeting minutes, which state that:

> President Gibson informed everyone Council will not be adjourning but will be entering Executive Session regarding Pending Litigation after a brief ten minute recess. Those included in Executive Session are Members of Council, City Manager, Law Director and Outside Council.
>
> Mayor Hale moved to enter Executive Session after a ten minute recess. Mr. Kessler seconded. Motion carried. The regular meeting ended at 8:17 pm. Council entered Executive Session at 8:27 pm.

Doc. 60-1 at PageID 1784. Based upon the foregoing, Plaintiffs' contentions concerning the February 21, 2017 meeting appear factually incorrect and, therefore, without merit.

The Court also finds that information communicated during the executive session on February 21, 2017 appears, based upon the evidence presented by Defendant, protected by the attorney-client privilege. Information is protected by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998). The only factor at issue here concerns potential waiver of privilege. As noted above, the Court rejects Plaintiffs' contention that Defendant waived the attorney-client privilege by failing to comply with Ohio's OMA because: (1) Plaintiffs cite no authority in support of their contention that non-compliance with the OMA waives the attorney-client privilege under federal law; and (2) Defendant did not violate the OMA with regard to the February 21, 2017 executive session. *See supra*.

As noted by Defendant, the Court previously found a waiver of attorney-client privilege and work product protection with regard to four emails inadvertently disclosed by Defendant in response to Plaintiff Judith Tomb's numerous public records requests. *See* doc. 51 at PageID 1696. Waiver of privilege extends to all "communications on the same subject matter." *In re*

*Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 255 (6th Cir. 1996). Here, however, the undersigned agrees with Defendant that the waiver previously found by the Court does not extend to Plaintiffs' proposed area of inquiry with Mr. Gibson and, in fact, Plaintiffs make no specific argument in their memorandum that the wavier does so extend.

Accordingly, based upon the foregoing, the Court **GRANTS** Defendant's motion for a protective order regarding the deposition of Joseph Gibson. Again, the Court does not anticipate revisiting this issue and expects that the parties will continue to complete discovery promptly.

### C. Conclusion

Defendant's motion for a protective order (doc. 57) is **GRANTED**. Pursuant to Fed. R. Civ. P. 26(c)(3) and 37(a)(5), the Court will entertain Defendant's motion for expenses and attorney's fees associated with its motion for a protective order if filed within **21 DAYS** from the entry of this Order.

**IT IS SO ORDERED.**

Date:  June 9, 2017                          s/ Michael J. Newman
                                                                         Michael J. Newman
                                                                         United States Magistrate Judge