UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

TALISMANIC PROPERTIES, LLC, *et al.*,

    Plaintiffs,

vs.

TIPP CITY, OHIO,

    Defendant.

Case No. 3:16-cv-285

Magistrate Judge Michael J. Newman
(Consent Case)

---

**DECISION AND ENTRY: (1) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 75); (2) GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT (DOC. 88) WITH REGARD TO PLAINTIFFS' FEDERAL CLAIMS; (3) DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' REMAINING STATE LAW CLAIMS; (4) DENYING WITHOUT PREJUDICE THE PARTIES' REMAINING MOTIONS (DOCS. 102, 104, 113, 115, 116); (5) DENYING AS MOOT PLAINTIFFS' MOTION FOR LEAVE TO EXCEED THE PAGE LIMITATION (DOC. 121); AND (6) DIRECTING THE CLERK OF COURTS TO ENTER JUDGMENT ACCORDINGLY, REMAND THE REMAINING STATE LAW CLAIMS TO THE COMMON PLEAS COURT OF MIAMI COUNTY, OHIO, AND TERMINATE THE CASE ON THE COURT'S DOCKET**

---

    This 42 U.S.C. § 1983 case, for which the parties have consented, is before the Court on the parties' cross motions for summary judgment; namely, Plaintiffs' motion for partial summary judgment (doc. 75) and Defendant's cross summary judgment motion (doc. 88). Also before the Court are a number of other motions related to the summary judgment briefing -- the City's motion to strike certain exhibits (doc. 104), Plaintiffs' three motions to strike certain evidence (docs. 102, 113, 116), and the City's motion to disqualify counsel (doc. 115).[1] All of the motions are all fully briefed (docs. 91, 96, 101, 105, 108, 109, 111, 112, 114, 117, 118, 119, 120,

---

[1] Because a decision on these motions is not necessary for disposition of the pending cross motions for summary judgment, the Court **DENIES** the motions (docs. 102, 104, 113, 115-16) **WITHOUT PREJUDICE**. Plaintiffs also filed a motion for leave to exceed the page limitation with regard to its memorandum in opposition to the City's motion to disqualify. Doc. 121. Because Plaintiffs' memorandum -- exclusive of the certificate of service -- is exactly 20 pages, the leave requested is unnecessary and, therefore, Plaintiffs' motion (doc. 121) is **DENIED** as moot.

122, 123). The Court has carefully considered all of the foregoing, including proper Rule 56 evidence cited to by the parties, and these motions are all ripe for decision.

**I.**

This case concerns, among other claims, alleged constitutional violations by Defendant Tipp City, Ohio ("the City") with regard to development of the Cedar Grove subdivision ("subdivision") and, in particular, issues concerning the electrical infrastructure proposed by the City for the subdivision. The parties have submitted hundreds of pages of arguments (docs. 75, 88, 91, 96, 101-02, 104-05, 108-09, 111-23), thousands of pages of deposition testimony (docs. 72-74, 76-87, 93-95), as well as thousands of pages of exhibits in support of their motions. *See, e.g.*, docs. 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88. The Court will summarize the facts material to disposition of the pending motions herein.

Two plaintiffs now seek relief. Plaintiff Talismanic Properties, LLC ("Talismanic") owns a tract of real estate within the City limits which consists of 42 lots available for residential construction. Doc. 5 at PageID 145.[2] Plaintiff Judith Tomb is Talismanic's general manager.[3] *Id*. Talismanic purchased the subject property from another developer in 2013 (doc. 85 at PageID 4843) and, thereafter, began the process of designing the subdivision and obtaining the necessary approvals from the City to commence development. Doc. 85 at PageID 4843-47.

In July 2013, the City approved Plaintiffs' preliminary plan for Cedar Grove and set a hearing for approval of Plaintiffs' final plan later that month. Doc. 96-17 at PageID 6846. Subsequently, on July 25, 2013, the City Planning Board recommended approval of Plaintiffs' final plan. *Id*. at PageID 6846-47.

---

[2] Plaintiffs in this case filed a verified complaint, which has "the same force and effect as an affidavit" for summary judgment purposes. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)).

[3] Presumably, Ms. Tomb is named as a separate Plaintiff in the case apart from Talismanic because of the public records requests she made, for which she seeks a determination that such requests were not fulfilled in a timely manner. For purposes of this opinion, the Court presumes she has suffered an actual injury, and thus has standing.

Part of Plaintiffs' final plan at that time was an electrical extension agreement executed by Plaintiffs in which Talismanic agreed to pay the City $142,721.00 for an electrical extension to the subdvision. *See* doc. 85-5 at PageID 5056-57. The cost for the electrical extension was originally estimated by the City in July 2013 and communicated to Plaintiffs at or about that time. Doc. 79-5 at PageID 3823-24. On July 25, 2013, Plaintiffs advised the City that the electrical extension cost was excessive and appeared "'to be an 'exaction' by the City which may be illegal." Doc. 85-4 at PageID 5055. Plaintiffs requested additional detail regarding the cost of the extension on August 5, 2013 (doc. 85-2 at PageID 5050) and, on August 9, 2013, Plaintiffs advised the City that construction documents could not be executed because, *inter alia*, "the financial burden" of the electrical extension "is too great for . . . the developer . . . to bear[.]" Doc. 85-3 at PageID 5052. As further explained by Plaintiffs on that date, "[t]he project simply cannot go forward until there is an economically viable resolution on the electrical issue." *Id*.

Nonetheless, on August 30, 2013, Plaintiffs signed the electrical extension agreement, agreeing, *inter alia*, "to pay to the city the sum of $142,721.00[.]" Doc. 85-5 at PageID 5056. When asked why she signed the agreement on behalf of Talismanic, Judith Tomb testified that she "had no alternative" after being "told point blank by Brad Vath of the City of Tipp City that if I did not sign it, the project would stop right then and there and no use would be made of the land." Doc. 85 at PageID 4871-72. The electrical extension agreement was made part of Plaintiffs' Subdivision Construction Agreement with the City executed on July 15, 2014 and subsequently submitted to the City Council for approval by ordinance. *See* doc. 96-17 at PageID 6848; *see also* doc. 96-17 at PageID 6938-39.

An ordinance to approve the Plaintiffs' final plan and the Subdivision Construction Agreement was placed on the City Council agenda for July 21, 2014, where it had its first reading. Doc. 96-17 at PageID 6848. The ordinance had its second reading at a City Council

3

meeting on August 4, 2014 and, immediately thereafter, the City Council President called for a second to the motion to approve the ordinance. *Id*. at PageID 6849. When the motion was not seconded, the ordinance was declared dead. *Id*.

Following failure of the ordinance, Talismanic filed suit against the City in the Common Pleas Court of Miami County, Ohio on August 18, 2014 (hereinafter referred to as "the first lawsuit"). *See* doc. 85-6. The pleadings were subsequently amended in November 2014 to add Tomb among the plaintiffs to that case. Doc. 96-17 at PageID 6843. The claims asserted by Plaintiffs against the City in the first lawsuit included, *inter alia*, a petition for a writ of mandamus in which Plaintiffs sought to compel the City "to (1) reverse the wrongful *de facto* denial/rejection of the ordinance and the failure to pass the ordinance [on August 4, 2013] and (2) approve the ordinance immediately." *Id*. at PageID 6854 (capitalization omitted). In that first lawsuit, Plaintiffs did not seek relief as a result of an alleged taking arising out of the electrical cost demand. Doc. 96-17. The parties ultimately settled their dispute and, in March 2015, the Common Pleas Court dismissed the first lawsuit with prejudice. Doc. 84-1 at PageID 4810-11. As part of that settlement, the City, by a 2015 ordinance, approved Plaintiffs' electrical extension. *See* doc. 5 at PageID 146.

Following dismissal of the first lawsuit, a number of other disputes arose between the parties regarding development of the subdivision and the cost of the electrical extension. *See* doc. 5 at PageID 145-51. In June 2016, Plaintiffs filed the instant suit against the City -- *i.e.*, the second lawsuit between the same parties -- in the Miami County Common Pleas Court. *See id*. Seeking relief under § 1983, Plaintiffs claim in the second lawsuit that: (1) application of City Ordinance § 155.03(F) deprives them of due process of law guaranteed by the Fourteenth Amendment; (2) the City's excessive fee demand constitutes a taking without just compensation in violation of the Fifth Amendment; and (3) the City's fee demand also violates Plaintiffs' right

4

to equal protection under the Fourteenth Amendment. Doc. 5 at PageID 157. Seeking relief under state law and via the Court's supplement jurisdiction, *see* 28 U.S.C. § 1367, Plaintiffs also claim in the second lawsuit that the City violated their right to due process under the Ohio Constitution, breached the parties' construction agreement, and tortuously interfered with Plaintiffs' business relationships with others.[4] Doc. 5.

In July 2016, the City timely removed Plaintiffs' complaint to this Court on the basis of federal question jurisdiction. Doc. 1. It is this complaint from the second lawsuit which the Court now reviews on summary judgment.

## II.

The Court first addresses the cross motions for summary judgment filed by the parties. Docs. 75, 88. A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment -- rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*.

---

[4] Plaintiffs concede and abandon their claims for declaratory relief regarding Ordinance § 155.03(F), tortious interference, due process violations under Ohio law, and punitive damages. In fact, the Court previously concluded -- in ruling on Plaintiffs' attempt to amend the pleadings -- that due process claims under the Ohio Constitution were futile; that the City is immune from tortious interference claims; and that punitive damages are unrecoverable against the City. *See* doc. 37.

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Instead, the party opposing summary judgment has a shifting burden and "must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." *Id.* (citation omitted). Failure "to properly address another party's assertion of fact as required by Rule 56(c)" could result in the Court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

### A. Constitutional Claims

As noted above, Plaintiffs' claim under § 1983 that the City's conduct (1) served to violate their due process rights, (2) constituted an uncompensated taking, and (3) caused them to suffer one or more equal protection violations. *See supra*.

With regard to their due process claim, Plaintiffs concede that such claim is now moot. Doc. 96 at PageID 6399. Accordingly, they abandoned that claim in their memorandum in opposition to the City's motion for summary judgment. *Id.* The City's summary judgment motion, therefore, regarding Plaintiffs' due process claim, is **GRANTED**.

Concerning the takings claim, Plaintiffs argue that the City violated the Fifth Amendment by demanding that they agree to pay $142,721 for the electrical extension or the City would not move forward with approving Plaintiffs' final plans. Doc. 5 at PageID 156-57; doc. 75 at PageID 2842. The Fifth Amendment protects the "right to just compensation for property the government takes when owners apply for land-use permits." *Koontz v. St. Johns River Water Mgmt. Dist.*, __ U.S. __, 133 S. Ct. 2586, 2594 (2013). In *Koontz*, the Supreme Court held that the Fifth Amendment allows the government to condition the approval of land-use applications on a landowner's relinquishment of a property right (including the right to money) "so long as there is a 'nexus' and 'rough proportionality' between the . . . demands and the social costs of the [landowner's] proposal." *Id.* at

2588, 2595 (citing *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 837 (1987); *Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994)). "[T]he government's demand for property from a land-use permit applicant must satisfy [these] requirements . . . even when the government denies the permit and even when its demand is for money." *Id.* at 2603.

In addition to their takings claim, Plaintiffs also allege that the electrical extension cost required by the City violates Plaintiffs' equal protection rights because other similarly situated developments in the City did not pay similar fees for an electrical extension. Doc. 5 at PageID 157; *see also* doc. 96 at PageID 6413. "[T]he Equal Protection Clause 'prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.'" *Franks v. Rubitschun*, 312 F. App'x 764, 765 (6th Cir. 2009) (citation omitted). "[T]he Equal Protection Clause's purpose 'is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Id.* (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Plaintiffs seek summary judgment on their takings claim, but not on their equal protection claim. *See* doc. 75. The City, in its cross motion for summary judgment, seeks judgment in its favor on both of these constitutional claims. The City asserts that such claims are: (1) barred by the applicable statute of limitations; (2) precluded by virtue of *res judiciata* following the issuance of a final judgment in the first lawsuit; and (3) inadequately pled. *See* doc. 88 at PageID 5537-42.

Assuming, without deciding, that the § 1983 claims were timely filed, and that Plaintiff Tomb has standing to plead such claims, *see supra* note 3, such claims are, nevertheless, precluded by *res judicata*. "[W]hen considering the preclusive effect of a state court judgment, [federal courts] must look to the law of that state." *Hamilton's Bogarts, Inc. v. Mich.*, 501 F.3d 644, 650 (6th Cir. 2007). Under Ohio law, a valid final judgment rendered on the merits bars all

subsequent actions based upon any claim arising out of the transaction[5] or occurrence that was the subject matter of the previous action. *Grava v. Parkman Twp.*, 653 N.E.2d 226, 228 (Ohio 1995). Thus, an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in the first lawsuit. *Id.*

*Res judicata* applies where there is: (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action. *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997). Plaintiffs concede that the first two elements exist in this case, but argue that *res judicata* does not bar their federal claims because they could not have been litigated in the first lawsuit and because they do not arise out of the same transaction or occurrence as the first lawsuit. Doc. 96 at PageID 6402-07.

Plaintiffs contend that they could not have raised these claims in the first lawsuit because the electrical agreement was not binding on the parties until ultimately approved by the City via ordinance in 2015. *See* doc. 96 at PageID 6404. Plaintiffs' position is contrary to *Koontz*, in which the Supreme Court stated that, with regard to takings claims under an unconstitutional conditions theory, a taking occurs whenever there is an "[e]xtortionate demand[] for property in the land-use permitting context[.]" *See Koontz*, 133 S.Ct. at 2596-97 (stating that "[e]xtortionate demands for property in the land-use permitting context run afoul of the Takings Clause"). Because the City's demand predated Plaintiffs' execution of the electrical extension agreement on August 30, 2013, and Plaintiffs' first lawsuit was commenced approximately one year later in August 2014, the undersigned concludes that Plaintiffs could have, in the first lawsuit, sought

---

[5] "For the purpose of a *res judicata* analysis, a 'transaction' is defined as a 'common nucleus of operative facts.'" *U.S. Bank Nat'l Ass'n v. Gullotta*, 899 N.E. 2d 987, 991 (Ohio 2008).

8

just compensation for a taking arising from the City's allegedly excessive fee demand -- as well as their ancillary equal protection claim. Thus, the third element is present.

The fourth and final element concerns whether or not Plaintiffs' constitutional claims in the second lawsuit arise out of the same transaction or occurrence as that presented in the first lawsuit. Upon entry of a final judgment, not only are a plaintiff's specific claims extinguished, but so are "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Grava v. Parkman Twp.*, 653 N.E.2d 226, 229 (Ohio 1995). Plaintiffs' first lawsuit concerned, *inter alia*, an application for a writ of mandamus action seeking to compel the City to pass an ordinance approving the final plan after the original ordinance failed on August 4, 2014. *See* doc. 96-17 at 6848, 6854-55. Without dispute, the final plan that Plaintiffs sought to compel the City to pass in the first lawsuit included the electrical extension agreement that Plaintiffs now allege they were required to sign before the City would ever consider approving final plan. *See* doc. 75 at PageID 2828; doc. 85-7 at PageID 5080, 5099; *see also* doc. 96-17 at PageID 6848, 6854. Accordingly, the undersigned concludes that Plaintiffs' constitutional claims asserted here in the second lawsuit arise from the same transaction or occurrence also at issue in the first lawsuit.

Based on the foregoing, Plaintiffs' constitutional claims are barred by application of *res judicata*. As a result, the City's motion for summary judgment, as it relates to Plaintiffs' federal constitutional claims, is **GRANTED** and Plaintiffs' cross motion for partial summary judgment (doc. 75) is **DENIED**.

    **B.**    **State Law Claims**

Plaintiffs' remaining claims all concern causes of action asserted under Ohio state law. "Once [a] district court dismisse[s] all of the claims over which it ha[s] original jurisdiction, it

act[s] squarely within its discretion by declining supplemental jurisdiction over the remaining [state law] claim[s] and dismissing [them] without prejudice." *Booker v. City of Beachwood*, 451 F. App'x 521, 522–23 (6th Cir. 2011) (citing 28 U.S.C. § 1367(c)(3). Rather than dismissing state law claims without prejudice, however, in a case removed from state court to the federal court, where "all federal claims have been dismissed before trial, the best course is to remand the state law claims to the state court from which the case was removed." *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 359 (6th Cir. 2004). In fact, the Sixth Circuit has stated that "[g]enerally, once a federal court has dismissed a plaintiff's federal law claim[s], it should not reach state law claims." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).

"Comity to state courts is considered a substantial interest; therefore, this Court applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed -- retaining residual jurisdiction 'only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues.'" *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011). There are any number of "considerations which lower courts in our circuit should weigh" when determining whether "convenience, comity, fairness, and judicial economy" outweigh the substantial interest in comity to state courts -- although "[t]he Sixth Circuit has not expressly stated a comprehensive list of factors" that must be considered. *See Fox v. Brown Mem'l Home, Inc.*, 761 F. Supp. 2d 718, 724-25 (S.D. Ohio 2011).

In this case, Plaintiffs' remaining claims all involve unique issues of state law, *i.e.*, the timeliness of the City's responses to Plaintiffs' numerous public records requests under Ohio Rev. Code § 149.43, and application of the implied covenant of good faith in a land development contract between a developer and an Ohio municipality. The issue presented with regard to the

electrical extension agreement is especially novel and the parties at this time cite no Ohio authority on the issue presented -- whether the implied covenant of good faith within a contract requires a municipality to minimize all costs and expenses associated with its contractual duties so as to perform its work for substantially less than the estimated cost agreed to by the parties. Given that the federal claims have been resolved on procedural grounds without consideration of the merits of any of Plaintiffs' claims, there is no compelling need for this Federal Court to weigh in on such novel issues of Ohio contract law -- or to address what is or is not timely as it relates to responding to public records requests under Ohio law.

While this case has been pending in this Court for over a year and the Court supervised discovery through its completion, the Common Pleas Court is no stranger to the dispute between these parties given that (1) it presided over the entirety of the first lawsuit and (2) this second lawsuit was originally pending there prior to removal. The issue of whether to exercise supplemental jurisdiction over Plaintiffs' state law claims is a close call, but after carefully weighing the *Fox* factors, the undersigned is compelled to conclude that remand is required. The factors weighing in favor of the Court exercising supplemental jurisdiction do not outweigh the factors favoring remand in light of the strong presumption against exercising supplemental jurisdiction. Accordingly, the undersigned concludes that Plaintiffs' state law claims be **REMANDED** to the Miami County Common Pleas Court for resolution of Plaintiffs' state law claims.

In light of this remand, the merits of the parties' remaining motions (docs. 102, 014, 113, 115-16) need not be reached. These motions are each **DENIED WITHOUT PREJUDICE** to refile in the state court.

**III.**

Based upon all of the foregoing, the Court **ORDERS** as follows:

(1)　Plaintiffs' motion for partial summary judgment (doc. 75) is **DENIED**;

(2)　Defendant's motion for summary judgment (doc. 88) is **GRANTED** with regard to Plaintiffs' federal claims;

(3)　The Court **DECLINES** to exercise supplemental jurisdiction over Plaintiffs' remaining claims, all of which involve causes of action under Ohio state law;

(4)　The Court **DENIES WITHOUT PREJUDICE** the parties' remaining motions (docs. 102, 104, 113, 115, 116, 121);

(5)　The Court **DENIES AS MOOT** Plaintiffs' motion for leave to exceed the 20 page limitation (doc. 121); and

(6)　**DIRECTS** the Clerk of Court to enter judgment as set forth above, **REMAND** Plaintiffs' state law claims to the Court of Common Pleas for Miami County, Ohio, and **TERMINATE** this case on the Court's docket.

**IT IS SO ORDERED.**

Date:　December 11, 2017　　　　　　　　　　s/ Michael J. Newman
　　　　　　　　　　　　　　　　　　　　　　Michael J. Newman
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge